**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**TERESA BEASLEY**                                                      **PLAINTIFF**

**VS.**                                **4:06CV00034-WRW**

**HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY; and
ASSOCIATES' HEALTH AND
WELFARE PLAN**                                             **DEFENDANTS**

## ORDER

Pending is Plaintiff's Motion for Partial Summary Judgment[1] to which Defendants

responded.[2]  Also pending is Defendants' Motion to Strike[3] to which Plaintiff responded.[4]

This is an ERISA claim for benefits under 29 U.S.C. § 1132 (a)(1)(b).   Plaintiff Teresa

Beasley was an employee of Wal-Mart Stores, Inc. ("Wal-Mart") and its subsidiary, Claims

Management Inc. ("CMI"), from 1991 through 2004.  Plaintiff participated in Wal-Mart's Long

Term Disability Plan (the "Plan"), which was insured and underwritten by Hartford Life and

Accident Insurance Company ("Hartford").

Plaintiff contends that she has exhausted her administrative remedies and seeks Partial

Summary Judgment on this issue.  Defendants contend that Plaintiff failed to submit a written

appeal, and, therefore, failed to exhaust her administrative remedies.  Defendants also contend

---

[1]Doc. No. 10.

[2]Doc. No. 14.

[3]Doc. No. 17.

[4]Doc. No. 22.

1

that Plaintiff's affidavit, which was attached to her motion, should be stricken, because it is not part of the administrative record.

## I. Background

Plaintiff worked for CMI until June 27, 2004, and was a participant in a Plan insured by Hartford. The Plan provides for an internal appeal process if an application for disability is denied.[5] Plaintiff submitted an Application for Benefits under Wal-Mart's Plan on August 16, 2004 and January 7, 2005.[6]

Her second application was denied January 25, 2005.[7] The denial letter explained the internal appeal process:

> If you do not agree with our denial, in whole or in part, and you wish to appeal our decision, you or your authorized representative must write to us within one hundred eighty (180) days from your receipt of this letter. Your appeal letter should be signed, dated and clearly state your position.[8]

It is uncontested that Hartford first received written notice from Plaintiff's lawyer on October 6, 2005 -- after the 180 days had lapsed.[9] Despite the untimeliness of these letters, Plaintiff maintains that she verbally appealed Hartford's denial. Plaintiff attached an affidavit to her Motion setting out the actions she took to appeal the denial.[10]

---

[5]Doc. No. 23, Administrative Record p. 0069.

[6]*Id.* at 0310-13.

[7]*Id.* at 0357-60.

[8]*Id.*

[9]*Id.* at 0351-55.

[10]Doc. No. 10.

According to her affidavit, she made a telephone call to Angela Whitlow (a CMI employee) and to Hartford after receiving the denial letter, and she delivered additional documentation to Ms. Whitlow, who forwarded it to Hartford.[11]  Plaintiff was called sometime later by Ms. Whitlow and told that Hartford would not change its initial decision.[12]

Defendants contend that this affidavit should not be considered, because it is not part of the administrative record.  Plaintiff maintains that the administrative record already contains information confirming the facts set out in her affidavit.  Plaintiff points out that the record also contains a letter which has the same allegations that are in the affidavit.[13]

The administrative record contains entries showing that Hartford received additional information from Plaintiff's employer on March 24, 2005.  These entries also indicate that Plaintiff's employer asked Hartford to review the new information to determine if it "substantiated disability earlier."[14]  Hartford complied and reviewed Plaintiff's file on March 29, 2005.[15]

There are also entries showing two phone calls by Plaintiff in May and June 2005 to John Wentworth ("Wentworth"), a claim's examiner for Hartford.  According to the record, Plaintiff asked Wentworth for a copy of her file, and, in a second conversation, she requested a copy of her denial letter.

---

[11]Doc. No. 10, ¶ 3 and ¶ 4.

[12]*Id., ¶* 5.

[13]Doc. No. 23, Administrative Record, pp. 0364-366.

[14]*Id.*

[15]*Id.*

## II. Authority

### A. Evidence Outside Administrative Record

Review of an ERISA claim is normally limited to the administrative record.[16] Additional evidence gathering is forbidden on deferential review and discouraged on *de novo* review.[17] But, a district court may admit additional evidence if the plaintiff shows good cause.[18]

In limited circumstances, evidence outside the administrative record is considered relevant, without a good cause showing. For instance, the Eighth Circuit Court of Appeals and others have allowed discovery of additional evidence on issues linked to either the development or the credibility of the administrative record.[19] This involves allowing evidence that may show: (1) if a conflict of interest exists; (2) if a serious procedural error was committed; (3) if a fiduciary duty was breached; and (4) if there is bad faith. The decision on the merits must rest

---

[16]*Miller v. United Welfare Fund*, 72 F.3d 1066, 1070 (2d Cir. 1995).

[17]*Cash v. Wal-Mart Group Health Plan*, 107 F.3d 637, 641-42 (8th Cir. 1997) (quoting *Donatelli v. Home Ins. Co.*, 992 F.2d 763, 765 (8th Cir. 1993)).

[18]*King* v. *Hartford Life and Accident Ins. Co.*, 414 F.3d 994 (8th Cir. 2005).

[19]*Farley v. Arkansas Blue Cross & Blue Shield*, 147 F.3d 774, 776 n.4 (8th Cir. 1998) (limited discovery of additional evidence is appropriate for the purpose of determining the correct standard of review); *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955 (9th Cir. 2006) (additional evidence may be taken when plan administrator has engaged in procedural irregularities); *Vanderklok v. Provident Life & Accident Ins. Co.*, 956 F.2d 610, 617 (6th Cir. 1992) (limited discovery of additional evidence is allowed to determine if plaintiff had been denied procedural protection under ERISA); *Zervos v. Verizon New York, Inc*., 252 F.3d 163, 174 (2d Cir. 2001) (district court is not confined to the administrative record on issue of question of conflict of interest); *Liston v. Unum Corp. Officer Severance Plan*, 330 F.3d 19 (1st Cir. 2003) (certain kinds of claims -- proof of corruption -- may take a reviewing court to materials outside the administrative record); *Wildbur v. ARCO Chemical Co*., 974 F.2d 631, 638 (5th Cir. 1992) (the factual background of the administrator's determination and any inferences of a lack of good faith, may require the court to review evidence that was not presented to the administrator); *Perlman*

on the administrative record after procedural issues have been decided on any extrinsic evidence.[20]

## B. Exhaustion

ERISA does not require employees to exhaust contractual remedies before bringing suit.[21]  Exhaustion is not required if the Plan does not contain a review process or if the employee was not given notice of this process.[22]

If the Plan contains a review procedure that complies with ERISA,[23] the employee must exhaust her claim before filing a complaint.  This is so, even if a denial letter does not explicitly describe the review procedure as mandatory or as a prerequisite to suit.[24]

The Eighth Circuit has emphasized the purpose and importance of the exhaustion requirement:

> Exhaustion serves many important purposes -- giving claims administrators an opportunity to correct errors, promoting consistent treatment of claims, providing a non-adversarial dispute resolution process, decreasing the cost and time of claims resolution, assembling a fact record that will assist the court if judicial review is necessary, and minimizing the likelihood of frivolous lawsuits.[25]

## C.  Substantial Compliance

---

[20]*Abatie*, 458 F.3d at 955.

[21]*Conley v. Pitney Bowes*, 34 F.3d 714, 716 (8th Cir. 1994).

[22]*Id.* at 717-18.

[23]29 U.S.C. § 1133 and 29 C.F.R. § 2560.503-1(f) and (g) (statutory and regulatory requirements that plan participants be given adequate notice setting out the reasons for a denial of their claim, and providing a reasonable opportunity for a full and fair review).

[24]*Wert v. Liberty Life Assurance Co. of Boston, Inc.*, 447 F.3d 1060, 1063 (8th Cir. 2006).

[25]*Galman v. Pudential Ins. Co. of America*, 254 F.3d 768 (8th Cir. 2001) (citing *Kinked v. Southwestern Bell Corp. Sickness & Accident Disability Benefit Plan*, 111 F.3d 67, 68 (8th Cir. 1997)).

Courts have discretion to apply the equitable doctrine of substantial compliance, which does not materially modify a plan, but is a doctrine to assist the court in determining whether conduct should be considered the equivalent of compliance under a contract.[26] It is a doctrine that is intended to circumvent harsh results produced by an overly technical adherence to the exact words of a plan.[27] Substantial compliance is a common-law doctrine that is often applied to notice provisions of insurance policies:

> Substantial performance of a condition has been said to be simply another way of describing an immaterial breach, with the court focusing on the materiality of the breach rather than on the materiality of the provision at issue. Thus, although some authorities continue to demand strict, rather than substantial, compliance with notice and proof requirements, the view which appears to prevail in modern times is that, in keeping with the general rules of construction in favor of the insured and against forfeitures, substantial, rather than strict, compliance is all that is required as to notice of loss or claim, as well as proof of loss provisions. In some jurisdictions, the substantial compliance rule is limited by the caveat that substantial compliance is sufficient only if the insurer suffers no prejudice by virtue of the difference between strict compliance and the degree of compliance actually made in a given case.[28]

ERISA preempts state law, including state common law, but that does not mean that all common law concepts are inapplicable to ERISA[29] Congress anticipated the development of a federal common-law of rights and obligations under ERISA.[30] When state law has been preempted and ERISA is silent on the matter, federal common-law may, in certain instances, be

---

[26]*Phoenix Mutual Life Insurance Co. v. Adams*, 30 F.3d 554, 563 (4th Cir. 1994).

[27]*Id.*

[28]Lee Russ, Thomas F. Sagely, Steven Pitt, *Couch on Insurance* § 186:33 (3d ed. 2005).

[29]*Thomason v. Aetna Life Insurance Co.*, 9 F.3d 645, 647 (7th Cir. 1993).

[30]*Phoenix Mutual Life Ins. Co.*, 30 F.3d at 563 (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56 (1987); *Firestone Tire and Rubber v. Bruch*, 489 U.S. 101, 110 (1989).

applied. While the Eighth Circuit has not yet applied the doctrine of substantial compliance, it

has recognized its applicability to ERISA decisions.[31]

### D.   Fiduciary Duties of Loyalty and of Care

Under ERISA, a person is a fiduciary with respect to a plan if he has any discretionary

authority or discretionary responsibility in the administration of such plan.[32]

ERISA imposes a statutory duty of care on fiduciaries. The duty of care requires a

fiduciary to discharge its duties "with the care, skill, and diligence that a prudent man would

use."[33] The duty of care obligates the fiduciary to convey complete and accurate information

material to the beneficiary's circumstance."[34] This duty imposes a "prudent person" obligation

which requires a fiduciary to act as a prudent person in a similar situation.[35]

Congress intended ERISA's fiduciary responsibility provisions to codify the common-

law of trusts.[36] Under these principles, a fiduciary has an unyielding duty of loyalty to the

---

[31]*Alliant Techsystems, Inc. v. Marks*, 465 F.3d 864, 871 (8th Cir. 2006)(finding that an administrator of a plan was reasonable when it interplead funds and left the legal issue of substantial compliance to the court).

[32]29 U.S.C. § 1132(a)(3).

[33]29 U.S.C. § 1104(a)(1)(B).

[34]*Krohn v. Huron Mem. Hosp.*, 173 F.3d 542, 547 (6th Cir. 1999).

[35]29 U.S.C. § 1104(a)(1)(B); *Berlin v. Michigan Bell Telephone Co.*, 858 F.2d 1154, 1162 (6th Cir. 1998); *Morse v. Stanley*, 732 F.2d 1139, 1145 (2d Cir. 1984).

[36]*Firestone*, 489 U.S. at 110; *see also Bixler v. Central Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1299 (3d Cir. 1993) (explaining that although the statute articulates a number of fiduciary duties, Congress relied upon the common-law of trusts to define the general scope of responsibility) (citing *Central States, Southeast & Southwest Areas Pension Fund v. Central Transport, Inc.*, 472 U.S. 559, 570 (1985)).

beneficiary.[37]  This duty forbids a fiduciary from making material misrepresentations to the beneficiary.[38]  Misleading communications to plan participants about plan administration will support a claim for a breach of fiduciary duty.[39]

Moreover, a fiduciary's responsibility when communicating with the beneficiary includes more than a duty to avoid affirmatively misleading a beneficiary.  ERISA administrators have an obligation not to give incomplete, inconsistent or contradictory disclosures.[40]

A fiduciary is sometimes obliged to volunteer information to the beneficiary.  "The duty to disclose crucial information is at the core of a fiduciary's responsibility, animating the common law of trusts long before the enactment of ERISA."[41]  The common-law identifies two instances where a trustee is under a duty to inform: (1) when a beneficiary requests information about the nature and amount of the trust property;[42] and (2) when the fiduciary knows that the beneficiary is unaware of crucial information.[43]

---

[37] *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 152-53 (1985) (Congress intended to incorporate the fiduciary standards of trust law into ERISA, and it is black-letter trust law that fiduciaries owe strict duties running directly to beneficiaries in the administration and payment of trust benefits.).

[38] *Varity Corp. v. Howe*, 516 U.S. 489, 506 (1996) (affirming *Howe v. Varity Corp.*  36 F.3d 746 (1994)).

[39] *Drennan v. Gen. Motors Corp.*, 977 F.2d 246, 251 (6th Cir. 1992).

[40] *Harte v. Bethlehem Steel Corp.*, 214 F.3d 446, 452 (3d Cir. 2000).

[41] *Eddy v. Colonial Life Ins. Co. of America*, 919 F.2d 747, 750 (D.C. Cir. 1990).

[42] *Faircloth v. Lundy Packing Co.*, 91 F.3d 648, 656 (4th Cir. 1996).

[43] Restatement (Second) of Trusts § 173 (1959).

In other words,  the duty to inform includes a duty to avoid misleading, and a duty to inform when the trustee knows that silence might be harmful.[44]   An ERISA fiduciary that knows or should know that a beneficiary is acting under a misunderstanding of plan requirements cannot remain silent -- especially when that misunderstanding was fostered by the fiduciary's own material representations or omissions.  A fiduciary is obligated to advise the beneficiary "of circumstances that threaten interests relevant to the [fiduciary] relationship."[45]

## IV.  Discussion

Additional evidence is considered when deciding issues linked to the development of the administrative record and determining if a breach of fiduciary duty occurred during this process.[46]  Because the exhaustion issue in this case involves such matters, the Plaintiff's affidavit will be considered, even though it is not part of the official administrative record.

The administrative record reveals that Plaintiff's employer contacted Hartford, questioned the denial of her claim, and supplied additional information for review before the appeal process expired.[47]  Moreover, Hartford reviewed this additional information.  This supports Plaintiff's allegations that she relied on her employer as a middle-man in what she believed was an appeal of her claim denial.[48]

---

[44]*Howe*, 36 F.3d at 754 (stating that a beneficiary about to plunge into a ruinous course of dealing may be betrayed by silence as well as the spoken word); *Jordan v. Federal Express Corp*., 116 F.3d 1005, 1016 (3d Cir. 1997).

[45]*Eddy*, 919 F.2d at 750.

[46]*Farley*, 147 F.3d at 776 n. 4.

[47]Doc. No. 23, Administrative Record p. 0092.

[48]Doc. No. 10, Pl. Ex. 4.

The record also shows that, on two occasions, Plaintiff spoke with Wentworth before the appeal time expired. During these conversations, Wentworth told Plaintiff that she had to request a copy of her file in writing, but he did not tell her that she must perfect her appeal in writing.

During these conversations, Wentworth was aware that the time for a written appeal was fast approaching, and he knew that Plaintiff had cognitive "issues."[49] Wentworth should have known that Plaintiff was pursuing an appeal. For instance, he knew that the denial was questioned, that she had provided additional information via her employer,[50] and that she was requesting a copy of her file.[51] Finally, Wentworth knew that Plaintiff had failed to strictly comply with the review process.

An ERISA fiduciary that knows or should know that a beneficiary is acting under a misunderstanding of plan requirements cannot remain silent.[52] Wentworth did not act prudently when he remained silent during his conversations with Plaintiff.[53] Based on this evidence, I find that Wentworth breached his fiduciary duty to Plaintiff, and his silence contributed to her failure to strictly adhere to the Plan's provisions.[54] In view of this breach, a less deferential review will

_____

[49]Doc. No. 23, Administrative Record p. 0092.

[50]*Id.*

[51]*Id.*

[52]*Howe*, 36 F.3d at 754.

[53]*Berlin*, 858 F.2d at 1162; *Morse*, 732 F.2d at 1145.

[54]*Woo v. Deluxe Corp.*, 144 F.3d 1157, 1161 (8th Cir. 1998).

be applied to determine if Plaintiff substantially complied with the exhaustion provisions in the Plan.[55]

The purpose of the exhaustion requirement is to provide a plan administrator with the opportunity to develop the administrative record and make a full review before litigation. In this case, Plaintiff's verbal appeal satisfies this purpose -- Hartford was aware of the basis for her appeal and was given supporting information. Moreover, when a failure to strictly comply does not prejudice the other party, the doctrine of substantial compliance should be applied.

Applying a less deferential standard to Hartford's Plan interpretation, I find that Plaintiff fulfilled the substantive purpose of exhaustion and did not prejudice Hartford. Her failure to file her appeal in writing was immaterial, and she, therefore, substantially complied with the Plan's internal review process. Plaintiff's Motion for Partial Summary Judgment is GRANTED. Defendant's Motion to Strike is DENIED.

IT IS SO ORDERED this 29th day of March, 2007.

/s/Wm. R. Wilson, Jr.
UNITED STATES DISTRICT JUDGE

---

[55]*Id.*